UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GILBERT FOSTER,<br>    Plaintiff,<br><br>v.<br><br>OFFICER JOHN CARR,<br>OFFICER OLSON and<br>TOWN OF STONINGTON,<br>    Defendants. | :<br>:<br>:<br>:<br>:   No. 3:04cv2040(WWE)<br>:<br>:<br>:<br>:<br>: |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The genesis of this civil rights action is plaintiff Gilbert Foster's arrest pursuant to Connecticut General Statutes section 53a-167 by Town of Stonington Police Officers Todd Olson and John Carr. Plaintiff alleges use of unreasonable force, false arrest/false imprisonment and failure to supervise in violation of the Fourth, Sixth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983.

Defendants have filed a motion for summary judgment on the claim of false arrest/false imprisonment in violation of the Fourth Amendment.[1] For the following reasons, the motion for summary judgment will be granted.

---

[1] In their motion for summary judgment, defendants represent that the parties have agreed to withdrawal of the allegations of Sixth and Fourteenth Amendment violations in count one and all of the allegations in count two. In its opposition to summary judgment, plaintiff does not contradict defendants' representation. Accordingly, the Court will assume that these claims are withdrawn. Although plaintiff's opposition appears to argue that a First Amendment violation occurred, the complaint does not allege a claim of a First Amendment violation, and no motion to amend has been filed. Thus, the Court declines to address the merits of First Amendment claim.

1

**Background**

Defendants have submitted a statement of undisputed facts in compliance with Local Rule 56(a)(1), exhibits and affidavits.

Defendants Todd Olson and John Carr are officers in the Police Department of the Town of Stonington.  At the time relevant to this lawsuit, defendants Olson and Carr were detailed to a special assignment with the State of Connecticut, Department of Mental Health & Addiction Services, Tobacco Compliance Unit, to assist with enforcement of Connecticut General Statutes section 53-344 concerning the sale of cigarettes to underage individuals.

The special assignment entailed sending undercover underage personnel into local businesses in an attempt to purchase cigarettes.   If the undercover underage person successfully purchased cigarettes, the officers would issue the seller an infraction.

On January 8, 2002, an undercover minor purchased cigarettes at the Stonington Deli in Stonington.  The officers took enforcement action by issuing a ticket.  This event was witnessed by plaintiff, who recognized that the officers were conducting a cigarette sting.

Plaintiff left the deli and drove to Stonington Pizza.  After spending a short time in Stonington Pizza, plaintiff left the restaurant and drove to the Shell station next door to Stonington Pizza.  Plaintiff admits that he told the Shell Station clerk, Shawn Magliano, that he should check people's credentials because he had witnessed a cigarette sting at the Stonington Deli.

Officer Carr observed plaintiff quickly enter and exit both Stonington Pizza and

the Shell Station.

After plaintiff had left the Shell Station, Officer Carr entered the store and questioned Mr. Magliano about his conversation with plaintiff.  Mr. Magliano informed him that plaintiff had advised him to check identification because police were conducting a cigarette sting.

Later that same day, plaintiff returned to the Shell Station.  Officer Olson then entered the Shell Station and asked plaintiff to step outside to speak to the officers. Plaintiff admitted to the officers that he informed Mr. Magliano that he had witnessed a cigarette sting occurring down the road from the Shell station.  He denied that he intended to interfere with the cigarette sting.  Officer Carr then arrested plaintiff for interfering with a police officer pursuant to Connecticut General Statutes section 53a-167a.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502

U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc., 664 F. 2d at 351. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Defendants assert that summary judgment is proper on plaintiff's claims of false arrest because the officers arrested the plaintiff with probable cause. Alternatively, defendants argue that they are entitled to qualified immunity.

The Court finds that defendants are entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability to the extent that their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine protects public officials from the risk of potentially ruinous monetary liability which would deter qualified people from public service and safeguards the public interest in having government employees act with independence and without fear of consequences. Eng v. Coughlin, 858 F. 2d 889, 895 (2d Cir. 1988).

Qualified immunity "looks to the reasonableness of an officer's belief that he acted lawfully after the officer is found to have been unreasonable in his conduct." Stephenson v. Doe, 332 F.3d 68, 80 n.15 (2d Cir. 2003).  Thus, qualified immunity shields law enforcement officers from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable person would have known.  Saucier v. Katz, 533 U.S. 194 (2001).  Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

In the first stage of the qualified immunity analysis, the court must consider whether the facts, taken in a light most favorable to the plaintiff, could show a constitutional violation.  Cowan v. Breen, 352 F.3d 756, 760 (2d Cir. 2003).  If so, the court must determine whether the right in question was clearly established at the time the violation occurred.  Saucier, 533 U.S. at 201.

In determining whether a right is clearly established, the court considers whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Poe v. Leonard, 282 F.3d 123, 132 (2d Cir. 2002).   To determine whether a particular right was clearly established at the time defendants acted, the court should consider: 1) whether the right in question was defined with "reasonable specificity"; 2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and 3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.  Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991).  Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly

established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205. However, qualified immunity applies if the officer's mistake as to what the law requires is reasonable. Id. Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. Malley, 475 U.S. at 341. Summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree. Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

Thus, in the case of a claim of false arrest, a police officer is entitled to qualified immunity if:   1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest; or 2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

In this instance, reasonably competent police officers could disagree as to whether there was probable cause to arrest plaintiff for interference with police duties based on plaintiff's verbal statements. Section 53a-167a(a) provides, in relevant part:

> A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties.

6

In Connecticut v. Aloi, 86 Conn.App. 363 (2004), the Connecticut Appellate Court considered whether section 53a-167a proscribes verbal conduct that interferes with an officer's performance of his duties.  At issue was whether police officers had probable cause to arrest pursuant to section 53a-167a after defendant stated "this isn't Russia.  I'm not showing you any [identification]."  With regard to whether declaratory words could constitute interference under section 53a-167a, the Appellate Court looked to decisional law interpreting the predecessor statute to 53a-167 providing for prosecution of any person "who obstructs, resists or abuses any officer concerned in the administration of justice while in the execution of his office . . ." and extra-jurisdictional case law analyzing the words "obstruct," "resist," "hinder" or "endanger" within analogous statutes.   The court held:

> A reasonable and natural construction of the terms "obstruct," "resist," "hinder" and "endanger" reveals that they do not proscribe being verbally defensive or voicing mere declaratory statements, but proscribe some act that imposes an obstacle that may impede, hinder, prevent or substantially delay the performance of the officer's duties.

Id. at 373.  The court noted that defendant's declaratory statement did not amount to interference or obstruction since he did not "exhort or incite others in their dealings with an officer."  Id. at 374.

Of significance to this ruling on qualified immunity, the Appellate Court acknowledged that some courts have found verbal conduct to fall within the ambit of interference, but that it was not persuaded by the reasoning of those decisions.  Id. at 373 n.7 (citing People v. Krum, 374 Mich. 356, 362, cert. denied, 381 U.S. 935 (1965)).

Recently, a district court held that a defendant had intentionally interfered with a government agent engaged in an official duty by warning individuals about an undercover investigation into illegal sexual solicitation in a national park and by pointing out the undercover police officer.  U.S. v. Twinn, 369 F.Supp.2d 721, 723 (E.D. Va. 2005).  The Fourth Circuit affirmed a state court conviction of a defendant who had revealed information about an undercover investigation even though the information was revealed at a location far from the police activity.  Hess v. Medlock, 820 F.2d 1368, 1371 (4th Cir. 1987).

Thus, even assuming for purposes of this ruling that Aloi, which was decided in 2004, sets forth that verbal statements cannot constitute a sufficient basis to arrest pursuant to section 53a-167a, this law was not established at the time of plaintiff's arrest.  In 2002, defendants did not have notice that they were arresting plaintiff without probable cause, and thereby violating plaintiff's clearly established rights under the Fourth Amendment.  As Aloi recognized, jurisdictions had rendered conflicting decisions on the issue and, therefore, it was reasonable for defendants to believe, even mistakenly, that they had arrested plaintiff with probable cause.  The Court will grant defendants' motion for summary judgment.

## Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment [doc. #24] is GRANTED.  In light of the uncontested representations made in defendants' motion for summary judgment that only the claims of false arrest/false imprisonment in violation of the Fourth Amendment remained, the plaintiff is instructed to file a withdrawal of the

remaining claims within 15 days of this ruling's filing date.  If no withdrawal is filed, the Court will enter judgment on the claims and close the case.

So Ordered this 13th day of July, 2006 at Bridgeport, Connecticut.

_____/s/_____

WARREN W. EGINTON, SENIOR U.S.D.J.